## DELMONT v. STATE.

CRIMINAL LAW—JURY—MOTION TO QUASH PANEL—WAIVER—PRESUMPTIONS—BURGLARY—CORPUS DELICTI—EVIDENCE—SUFFICIENCY—POSSESSION OF RECENTLY STOLEN PROPERTY.

1. When in a criminal case a jury is sworn without objection, the defendant waives all irregularities in the manner and method of selecting the panel known to him at the time.

2. Where the record is silent as to whether a motion to quash a jury panel was timely made, every presumption will be indulged in favor of the denial of the motion, and that the motion would have been granted had it been made at the proper time upon substantial reasons.

3. It not appearing affirmatively from the bill of exceptions prepared by defendant's counsel that a motion to quash the panel was made before the jury was sworn, and there being no showing to authorize a later consideration of the motion, the denial thereof will be presumed to be free from error.

4. It is necessary in a charge of burglary to prove the breaking and entering with intent to steal, but direct evidence is not necessary.

5. Where circumstantial evidence is relied on to establish a burglary, the probative force of the evidence is exclusively for the jury.

6. Though the bare possession of recently stolen property is not, in itself, sufficient to convict of burglary, it is competent evi-

dence to be considered with other circumstances tending to connect the defendant with the crime, such as proximity to the place, flight, taking an assumed name, and other acts in connection with the exclusive possession of the stolen property indicative of guilt.

7. During the temporary absence of the owner an isolated cabin was burned, within which was left a locked trunk containing property shortly afterwards found in defendant's possession, who having been in the proximity of the cabin was fleeing out of the country under an assumed name; the frame of the trunk was found among the ruins of the cabin with the hasp of the lock attached thereto bent and twisted, and defendant had stated to a witness that the evidence was too strong in regard to the property found in his possession to permit his getting out of the trouble caused by his arrest. *Held,* that the case was not one of mere possession of stolen property, but the facts aforesaid were circumstances to be considered by the jury in determining whether defendant was guilty of burglary, and an instruction to that effect is approved.

ON PETITION FOR REHEARING.

1. Error not being presumed, it is incumbent upon a plaintiff in error to show affirmatively if such was the case, that his motion to quash the panel of petit jurors was made before the swearing of the jury, so as to authorize a review of the ruling denying it.

2. Upon the question of the time when a motion to quash the jury panel was made, a statement in the official stenographer's notes following the testimony and ruling upon the motion that "the following jury were then called" (naming the jurymen), does not show that the motion was made before the swearing of the jury, in view of other recitals of the bill of exceptions, and that said recital is consistent with a previous impaneling and swearing of the jury.

[Decided February 2, 1907.]
[Rehearing denied March 19, 1907.]　　　(88 Pac., 623, 1102.)

ERROR to the District Court, Uinta County, HON. DAVID H. CRAIG, Judge.

Oscar L. Delmont was convicted of burglary. The material facts are stated in the opinion.

*J. H. Ryckman,* for plaintiff in error.

The jury list was illegal in that it did not contain the names of any qualified jurors from a large section of the county. (State v. Bolln, 10 Wyo., 439.) The verdict is not sustained by sufficient evidence. The evidence fails to establish a burglary. The mere possession of stolen property without other evidence is not to be regarded as prima facie evidence of burglary. (5 Ency. L., 61.)

*W. E. Mullen,* Attorney General, for the State.

The evidence taken on the motion to quash does not bear out the contention that a mere arbitrary number of names was placed on the jury list, without regard to the number of qualified jurors shown by the assessment roll. Upon the evidence the motion was properly denied.

The facts elicited upon the trial of the case itself constituted a chain of circumstances sufficient to convince any reasonable mind of defendant's guilt. The *corpus delicti* was sufficiently established. (Dalzell v. State, 7 Wyo., 455; State v. Tucker (Ore.), 61 Pac., 898.) A conviction of burglary is proper on circumstantial evidence. (People v. Jockinsky, 106 Cal., 638; People v. Brady (Cal.), 65 Pac., 823.) Any other rule would often prevent a conviction of a crime of that character.

SCOTT, JUSTICE.

The defendant (plaintiff in error) was tried upon an information, found guilty of the crime of burglary and sentenced to the penitentiary for a term of years.

1. The defendant assigns as error the denial of his motion to quash the panel of petit jurors. The bill of exceptions recites "That before proceeding to the examination of witnesses the defendant by his attorney, J. H. Ryckman, filed a motion to quash the panel of jurors," and after reciting the evidence and proceedings taken upon the hearing of the motion, further says: "thereupon the court denied said motion to quash said panel and directed the trial to

proceed, to which order the defendant then and there excepted. Be it further remembered that thereupon to maintain the issues upon the part of the state the following witnesses were sworn and testified, to-wit:" Then follows the evidence given upon the trial. It will be noticed that the record is silent as to when the motion to quash with reference to swearing the jury was made. It is elementary that when a jury is sworn without objection the defendant in a criminal case waives all irregularities in the manner and method of selecting the panel known to him at the time. It does not appear from the record that the objection to the jury or the motion to quash was based upon facts known to him before or which had come to defendant's knowledge after the jury was sworn. While the record is silent as to whether the motion was timely, every presumption will be indulged that the ruling was correct, and further that had the motion been made at the proper time, based upon substantial reasons, it would have been granted. It not appearing affirmatively from the bill of exceptions, which was prepared and presented for allowance by defendant's attorney, that the motion to quash the panel was made before the jury was sworn, and there being no showing to authorize the court to entertain the motion thereafter, the ruling of the court must be presumed to have been correct.

2. At the close of the State's case the defendant moved the court to instruct the jury to find the defendant not guilty, which motion was denied. This ruling of the court is assigned as error and may be considered in connection with another assignment of error, viz.: that the verdict is not sustained by sufficient evidence. The information charges that the defendant did "unlawfully, feloniously and burglariously break and enter into the dwelling house of Alexander Swanson and B. F. Roberts there situate and did then and there commit a felony, to-wit: did feloniously take, steal and carry away one bridle of the value of thirty dollars, and one overcoat of the value of five dollars, the personal property of said B. F. Roberts, then and there

being, contrary to the form, force and effect of the statute in such case made and provided and against the peace and dignity of the State of Wyoming."

The only evidence offered in the case is that offered by the State. It appears from the record that there was evidence tending to prove that Alex Swanson had filed under the provisions of the United States land laws on a homestead in Fall River Basin, Uinta County, Wyoming; that he had constructed a log cabin upon the land and which was used and occupied as a dwelling house; that the country was sparsely settled; that he followed the occupation of trapping in the winter; that he had a partner, Mr. Roberts, in trapping during the fall and winter of 1904, who had for a short time prior to the alleged burglary lived and occupied the cabin with him; that Roberts had a trunk in the cabin which contained among other things traps, dies and an auger belonging to Swanson, and also clothes, including an overcoat, and a hair bridle belonging to Roberts; that about noon of November 25, 1904, Swanson and Roberts locked the cabin in which was the trunk and its contents, the trunk being locked, and started with a team to go to New Fork, distant from sixty to seventy miles, for the purpose of trapping. They traveled about three miles on a trail to a good camping ground on the main road and camped for the night. Between sundown and dark the defendant stopped at the camp and conversed with them. He was driving a team, a bay and a brown horse, and said he was hauling lumber to Fall River Basin and that he was working for a man who lived about twelve miles beyond Swanson's cabin, was going to his place and left in that direction. The camp was the nearest defendant would be to the cabin on the main traveled road, and was the nearest to the cabin that he was seen. They invited him to stay over night, but he declined, saying that he had some riding to do the next day. Swanson and Roberts saw defendant the next morning when he was passing near the camp going in an opposite direction out

of the basin. Swanson never went back to the cabin; he and Roberts continued their journey to New Fork country, and between Christmas and New Year's the latter returned to the homestead. Roberts corroborates Swanson's testimony and further says: that he arrived at the homestead on New Year's day and found the cabin burned; that there was about a foot of snow on the ground, including that where the cabin had stood; that he went to a neighbor's and that he and two men came back the next day and shoveled the snow off and found in the ashes the frame of the trunk and the lock, the hasp of which was bent and twisted and hanging to the frame of the trunk. John Steel testified that on December 17, 1904, the defendant rode into South Pass with him and that the defendant then had the hair bridle and offered to sell it to him; that defendant then told witness that he thought the sheriff was after him and upon inquiry as to what for, defendant said for "taking a bob-sled." William Cole testified that he knew defendant in December, 1904, and January, 1905, and that defendant was during that time going under the name of George Roberts; witness identified the coat as the one defendant had been wearing, and also stated that the morning the defendant was arrested he did not want to claim the coat. The name of Roberts, the true owner of the coat, was stamped or marked on the pocket when it was stolen and remained so marked while in defendant's possession up to and at the time of the trial and was in part identified by such mark by the owner. J. J. Marin testified that defendant came into South Pass on the evening of December 17 with the witness Cole, stayed over night, and the next morning he bought the hair bridle from the defendant. Steve Wade testified that he had talked with the defendant at the jail before the trial and the latter said to him he did not think he could get out of his trouble, that the evidence was too strong in regard to the bridle. The value of the coat and bridle was proven to be thirty-five dollars.

It is urged that the evidence did not establish the *corpus delicti.* It is, of course, necessary in a charge of burglary to prove the breaking and entering with intent to steal. Defendant presents some decisions which hold that the possession of property shown to have been recently stolen is competent evidence, though not in itself sufficient to convict of burglary. There is no question of the correctness of such rule when the State relies upon the bare possession unaccompanied by other evidence for a conviction. This is not a case of naked possession of property shown to have been recently stolen, but there was other and sufficient evidence, upon the charge of larceny, of the proximity to the place, fleeing out of the country, going under an assumed name, his exclusive possession of the stolen property and other acts and statements indicative of guilt. The cabin must have been entered and the goods taken from the trunk before the cabin was burned and the evidence was competent for the purpose of identifying the defendant as the one who entered the cabin and also to show his felonious intent in so doing. If these facts were establised they were circumstances to be considered by the jury together with all the other evidence in the case in determining whether the accused was guilty of the crime of burglary. The court properly instructed the jury that "All these facts and circumstances, so far as they have been proved, are proper to be taken into account by the jury, together with all the other evidence in the case, in determining how far the possesion of the property by the accused, if it has been proved, tends to show his guilt." That burglary need not be shown by direct evidence is well established. Indeed, in nearly all cases of this class, the prosecution must rely upon circumstantial evidence, and the probative force of the evidence offered must be and is exclusively for the jury. We perceive no error in the record and the judgment will be affirmed.                                         *Affirmed.*

Potter, C. J., and Beard, J., concur.

ON PETITION FOR REHEARING.

POTTER, CHIEF JUSTICE.

In the former opinion in this cause, the error assigned upon the denial of the motion of the plaintiff in error, defendant below, to quash the panel of petit jurors for alleged irregularities in the selection of the jury list was decided adversely to the plaintiff in error upon the ground that it was not affirmatively shown by the reocrd that the motion was made before the jury was sworn, or that the facts were such as to authorize the court to entertain such motion after the swearing of the jury; and in the opinion were quoted certain recitals of the bill of exceptions to the effect that the motion to quash was filed prior to the examination of witnesses, and that immediately after the denial of the motion the court directed the trial to proceed, and that thereupon witnesses were sworn and testified, etc. From the recitals of the bill so quoted, in the absence of any other or different showing by the record, it is clear that it would not appear that the motion to quash had been made before the jury was sworn.

Plaintiff in error, however, has filed a motion for rehearing, and thereby has directed our attention to certain recitals contained in the stenographer's notes of the testimony taken upon the hearing of the motion to quash, incorporated in the bill of exceptions, which recitals, it is now contended, are sufficient to show that the motion was made, heard and determined prior to the drawing and swearing of the jury. These recitals in the stenographer's notes were not called to our attention at the former hearing and were not noticed by us at the time of the preparation of the former opinion; but after a careful consideration of all that appears in the bill and the record we are clearly of the opinion that neither the recitals in the stenographer's notes nor the record as a whole can be held to have the effect contended for by counsel for plaintiff in error.

The opening paragraph of the bill of exceptions is as

follows: "Be it remembered that on the 7th day of April, 1905, this cause came on for trial before Judge David H. Craig and a jury; that before proceeding to the examination of witnesses the defendant, by his attorney, J. H. Ryckman, filed a motion to quash the panel of jurors, and the affidavit in support thereof, which motion and affidavit are in words and figures as follows, to-wit:" Then follows a copy of the motion and affidavit. It is then recited as follows: "Be it remembered further that thereupon the defendant called and had sworn as witnesses in support of said motion Donald McAllister, County Clerk of said Uinta County, and Joseph B. Martin, County Treasurer of said Uinta County, whose testimony is all set out in the certified transcript of the official stenographer of this court hereinafter set out and incorporated in this bill of exceptions, and that no other or different evidence and testimony was offered or received upon the part of said defendant in support of his said motion, and that said transcript contains all of said testimony. Be it remembered further that thereupon the County and Prosecuting Attorney of said Uinta County on behalf of the State filed in rebuttal in said cause the affidavit of Thomas Painter, chairman of the Board of Commissioners of said Uinta County, which affidavit is in words and figures as follows (and no other or different evidence or testimony was offered or received on behalf of the State):" Then follows a copy of the affidavit referred to. It is then further recited: "Be it remembered further that thereupon the court denied said motion to quash said panel and directed the trial to proceed, to which order the defendant then and there excepted. Be it remembered further that thereupon to maintain the issues on the part of the State the following witnesses were sworn and testified, to-wit:" naming the witnesses, "and that the whole of their testimony is set out in the transcript of the official stenographer, and is as follows, including the testimony of said Donald McAllister and Joseph B. Martin, and that no other or different evidence or testimony was given in said

cause and that said transcript contains all of said evidence contained in said cause and is as follows:"

Immediately following the above recitals of the bill appears the stenographer's transcript, the first statement thereof, after giving the title of the cause, the venue and the appearances, reading as follows: "This matter coming on this 7th day of April, A. D. 1905, for trial before the Honorable David H. Craig, Judge, and a jury, the following proceedings were had, to-wit." Then follows the testimony of Donald McAllister and Joseph B. Martin, at the conclusion of which it is recited: "The court denies the motion on part of the defendant to quash panel, to which order and ruling of the court to deny motion counsel for defendant excepted. The following jury were then called," naming the jurymen, "counsel for defendant challenges the competency of the jury to try this case for the reason set forth in his motion and affidavit today filed, to quash panel. Motion denied, to which ruling and order of the court counsel for defendant excepts." Then follows the testimony of the witnesses produced and examined upon the trial of the cause.

The contention of counsel that the record recitals above quoted are sufficient to show that the motion to quash the panel was filed before the impaneling and swearing of the jury in the cause is based upon the statement in the stenographer's transcript that *the following jury were then called,"* which follows the recital of the ruling of the court upon the motion to quash. But we think it obvious that the recital relied on is not equivalent to a statement or showing that the jury had not previously been drawn and sworn, and would not be inconsistent with the drawing and swearing of the jury before the filing and hearing of the motion. Especially is this so when the recital is considered in connection with the preceding statements of the bill.

Under the jury system adopted in this state, the names of the twenty-four or more persons composing the panel of petit jurors for any particular term of court are written

upon separate slips and placed in a box known as jury box number "four." Section 3363, R. S. 1899, provides: "When an issue of fact, to be tried by a jury, is brought to trial the clerk under the direction of the court must openly draw out of the trial juror box numbered 'four' as many ballots, one after another, as are sufficient to form a jury." Section 3381 provides: "All jurors drawn for any purpose under the provisions of this chapter shall be drawn in open court, and a record of such drawing made upon the minutes of the court." Thus the authorized record of the drawing of a trial jury for any particular cause is to be found upon the court journal. Neither the bill of exceptions nor the stenographer's transcript is the proper place to record the fact of the drawing of the trial jury, and the names of the jurymen. It is evident, therefore, that the statement in the stenographer's transcript of the calling of the jury was not intended as a record of the drawing of the trial jury in this cause. The statement may well refer to the calling of the names of the jurymen who had previously been drawn and sworn, and who may have been excused pending the hearing of the motion to quash the panel It is a well-known practice for the trial jury in a particular cause which has been once impaneled and sworn to have their names called after each recess or adjournment of the court or jury during the trial, and the statement above referred to found in the stenographer's transcript that "the following jury were then called" is consistent with that practice. We do not question the propriety, where such is the case, of showing by recital in the bill of exceptions that a motion to quash the panel was filed and heard before the jury were permitted to be sworn; it is the office of a bill to preserve, among other exceptions taken on the trial, exceptions to rulings of the court in connection with the impaneling of the jury. But a record of the drawing of the jury is otherwise provided for, and hence the statement in the bill here relied on as to the calling of the jury is not necessarily to be understood as referring to the drawing of the jury, with-

out further explanation. The journal entry recording the drawing of the jury does not seem to have been brought into the record, and therefore we do not know what, if anything, it may show in relation to this matter.

Again, it is to be observed that the recital relied on is merely that the jury were then called; it is not stated that they were then sworn, and we perceive nothing in the recital inconsistent with their having been previously drawn, impaneled and sworn. The fact that, upon the jury being called at the time stated in the transcript of the stenographer's notes, defendant's counsel then challenged the competency of the jury to try the cause, upon the grounds stated in the motion to quash the panel is not sufficient in our opinion to show that they had not been previously drawn and sworn.

Error is not to be presumed, and it was incumbent upon the plaintiff in error to affirmatively show, if such was the case, that his motion to quash the panel was made before the swearing of the jury. This we think he has clearly failed to do by the record before us. No other ground for rehearing is presented, and for the reasons stated we are constrained to deny the petition.

BEARD, J., and SCOTT, J., concur.